UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ARI TEMAN,

                              Plaintiff,

-v-

UNITED STATES OF AMERICA *and*
JIMMY WONG,

                              Defendants.

25 Civ. 5424 (PAE)

ORDER

---

PAUL A. ENGELMAYER, District Judge:

      On June 4, 2025, plaintiff Ari Teman filed this action for habeas relief in the Southern District of Florida. Dkt. 1 ("Petition").[1] His Petition seeks, among other things, an order "releasing" him from his ongoing term of supervised release, and in the alternative, an order directing the United States Probation Department (the "Department") to recommend that his supervised release be remotely (or not at all) supervised and that he be permitted to reside in Israel during the balance of his term of supervised release. *Id.* at 13–14.

      On June 18, 2025, the Honorable Rodolfo A. Ruiz II transferred this action to this District.[2] Dkt. 9 at 6. The case has since been assigned to this Court as related to *United States*

---

[1] On June 26, 2025, this Court denied Teman's earlier-filed application for habeas relief pursuant to 28 U.S.C. § 2255. *See* 19 Cr. 696, Dkt. 564.

[2] Although Teman styled his request as a habeas petition under 28 U.S.C. § 2241, Judge Ruiz found that the relief the Petition requested "can only be sought under § 2255." Dkt. 9 at 3. Judge Ruiz explained that the Southern District of Florida "did not have jurisdiction" because "a § 2255 motion must be brought in the 'court which imposed the sentence being challenged,'" and this Court had imposed Teman's sentence. *Id.* (quoting 28 U.S.C. § 2255(a)).

*v. Teman*, 19 Cr. 696 (PAE), the criminal case from which Teman's supervised release term arises.[3]

In orders in the criminal case, this Court set a June 1, 2025 deadline for Teman to return to the United States. *See* 19 Cr. 696, Dkts. 531, 536, 541, 549, 556.[4] On June 12, 2025, the Department issued a report alleging violations of supervised release by Teman. The violations charged include a failure to abide by travel restrictions, in that Teman did not return to the United States by June 1, 2025, as the Court had directed. *See* 19 Cr. 696, Dkt. 560 (June 16, 2025 order, scheduling arraignment and citing prior orders).[5] The Court scheduled a hearing yesterday, July 7, 2025, at which Teman was to be arraigned on the violation specifications. *See* 19 Cr. 696, Dkt. 560. Despite ample notice of this hearing, Teman did not appear. The Court accordingly adjourned the conference without arraigning Teman.

In light of Teman's failure to appear for yesterday's arraignment and his apparent failure to return to the United States by June 1, 2025, as directed, Teman qualifies as a "fugitive" whom Second Circuit case law bars from seeking judicial relief. *See Hanson v. Phillips*, 442 F.3d 789, 795 (2d Cir. 2006); *see also* 19 Cr. 696, Dkt. 561 (Government's letter advocating "application of the fugitive disentitlement doctrine"). The so-called fugitive-disentitlement doctrine "applies to defendants that evade the authority of the justice system at *any* stage of the criminal process."

---

[3] In light of the related nature of the case, the Court directs the Clerk of Court to file a copy of this order on the docket of 19 Cr. 696 (PAE).

[4] As of May 31, 2025, Teman, then in his first year of a three-year supervised release term following service of a 12-months-and-one-day prison sentence on two counts apiece of bank and wire fraud, had been in Israel for eight-and-a-half months, with the Court's permission.

[5] The United States Court of Appeals for the Second Circuit dismissed as frivolous Teman's appeals of the Court's orders directing him to return. *See United States v. Teman*, No. 25-452-cr (2d Cir. June 3, 2025), Dkt. 38.1 (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)).

2

*United States v. Hayes*, 118 F. Supp. 3d 620, 624 (S.D.N.Y. 2015) (emphasis added). The premise of this doctrine is that "the fugitive from justice has demonstrated such disrespect for the legal processes that he has no right to call upon the court to adjudicate his claim." *United States v. Zedner*, 555 F.3d 68, 76 (2d Cir. 2008). It derives from the inherent authority of courts "to protect their proceedings and judgments in the course of discharging their traditional responsibilities." *Degen v. United States*, 517 U.S. 820, 823 (1996).

Relevant here, the doctrine gives courts "discretion to refuse to rule on the merits of a defendant's postconviction claims . . . when the defendant has fled from justice." *United States v. Morgan*, 254 F.3d 424, 426 (2d Cir. 2001) (citation omitted); *Bagwell v. Dretke,* 376 F.3d 408, 412 (5th Cir. 2004) (same); *Lopez v. Malley,* 552 F.2d 682, 683 (10th Cir. 1977) (same). Courts apply a two-step test. *United States v. Bescond*, 24 F.4th 759, 771 (2d Cir. 2021). First, the court "must determine that the litigant is a fugitive." *Id.* Second, if so, the court may "exercise its discretion to disentitle the fugitive" if doing so "would serve the doctrine's objectives." *Id.* Those are: "(1) assuring the enforceability of any decision that may be rendered against the fugitive; (2) imposing a penalty for flouting the judicial process; (3) discouraging flights from justice and promoting the efficient operation of the courts; and (4) avoiding prejudice to the other side caused by the defendant's escape." *Id.*

These facts here satisfy those standards. Indeed, they are strikingly similar to those in *United States v. Zedner, supra,* in which the Second Circuit upheld application of the doctrine. There, the Circuit held a defendant who had violated the terms of his supervised release was a "fugitive" where a condition of his supervised release had been not to leave the district without the permission of the district court; the defendant had been given permission to leave the United States for a defined period (no more than two weeks); he had specifically been warned that if he

3

did not return within two weeks of leaving the United States, he would be considered to have absconded from supervision; and he had not returned by the deadline set by the court. 555 F.3d at 78. The Circuit held that dismissing the fugitive's appeal would serve the fugitive disentitlement doctrine's objectives, because his "absence from the United States both casts serious doubt on whether the decision of this Court on his appeal will be enforceable and impairs efficient operation of the court." *Id.*

The same analysis holds here. First, Teman is a fugitive. The Court set a clear and firm deadline for his return to the United States. *See* 19 Cr. 696, Dkts. 549, 541, 531, 536; *see also* 19 Cr. 696, Dkt. 484 (setting out history of Teman's repeated requests to remain in Israel). It warned Teman that this deadline was "firm." 19 Cr. 696, Dkts. 541. And the Court—although viewing Teman's claim that flying was medically contra-indicated as contrived—specifically set the June 1, 2025 deadline so as to fall outside the period when his internist had stated that Teman could not safely fly. *See* Dkt. 531 at 7. The Court further noted that if Teman preferred to avoid air travel, he was at liberty to travel by boat to the United States, leaving from Israel—or a port elsewhere. *Id.* at 7–8. And the Court warned that should Teman fail to timely return, he would be in violation of a court order enforcing a condition of supervised release and that various adverse consequences might follow. *See, e.g.*, 19 Cr. 696, Dkt. 541 (citing *United States v. Barinas*, 865 F.3d 99 (2d Cir. 2017), which upheld tolling of expiration of supervised release term by virtue of defendant's fugitive status); 19 Cr. 696, Dkt. 560 (same). And the Second Circuit rejected Teman's *pro se* challenges to the order to return as frivolous. *See supra*, at 2 n.5. Under these circumstances, Teman's failure to return to the United States and appear at the arraignment, despite the Court's repeated and specific warnings, "constitutes a willful absence" that underscores his fugitivity. *Zedner*, 555 F.3d at 78.

4

Second, in multiple respects, staying Teman's bid for habeas relief (his second) while he evades the authority of the judicial system would serve the objectives of the fugitive disentitlement doctrine. *Bescond*, 24 F.4th at 771. Teman's absence from the United States impairs "the enforceability of any decision that may be rendered against [him]" in this case, *id.* For example, the Government may seek relief against him in this action, including sanctions for bringing frivolous claims. *See* 19 Cr. 696, Dkt. 561 (Government's letter arguing that Teman's claims have "largely" been "frivolous"). Barring Teman from calling upon this Court would also justly "impos[e] a penalty [on him] for flouting the judicial process." *Bescond*, 24 F.4th at 771. Declining to entertain this action during the period of fugitivity would also deny Teman the ability to end-run the proper forum in which to challenge the charged violations of supervised release brought by the Probation Department. That is the violation proceeding pending before this Court in 19 Cr. 696 (PAE) in which Teman, but for his failure to appear, would have been arraigned yesterday. Teman's attempt to challenge his conditions of supervised release via a habeas petition while remaining at large is a ploy to collaterally challenge the pending violation charges while avoiding the downside consequences of being found to have committed those violations. Requiring Teman to bring his challenge to the pending charges within the pending violation proceeding increases the likelihood that he will eventually appear (via surrender or apprehension) for that proceeding, in whose orderly completion the Probation Department and the public have an interest. Staying Teman's bid for habeas relief thus lessens "prejudice to the other side caused by the defendant's escape." *Id.* Finally, staying this action during Teman's fugitivity would deter copycat behavior, "discourage[e] flights from justice[,] and promot[e] the efficient operation of the courts." *Id.*

Actions have consequences. Teman's failure to return to the United States and failure to appear to face the supervised release charges brought against him have "demonstrated such disrespect for the legal processes that he has no right to call upon the court to adjudicate his claim" in this habeas action. *Zedner*, 555 F.3d at 76.

For all of these reasons, the Court hereby exercises its discretion to stay this action under the fugitive disentitlement doctrine. The Court will entertain an application to lift the stay upon a showing that Teman is no longer a fugitive.

SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge

Dated: July 8, 2025
       New York, New York